No. 28,981.

THE STATE OF KANSAS, *Appellee*, v. FRED WARNER, *Appellant*.

(282 Pac. 735.)

Opinion filed December 7, 1929.

*C. A. P. Falconer* and *Herbert Howland*, both of Atwood, for the appellant.
*William A. Smith*, attorney-general, and *J. P. Noble*, county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Fred Warner was charged in four counts with violations of the intoxicating liquor law. Count one charged unlawful

possession, count two an unlawful gift, count three unlawful transportation, and count four the maintenance of a nuisance. He was found guilty on counts one, three and four, and has appealed.

The record discloses that on the evening of January 22, 1929, R. R. Maiden, a federal prohibition agent, went to Atwood. About nine o'clock that evening he and the sheriff, G. C. Jennings, in an automobile, drove to the north part of town, where they saw defendant and one E. N. Conquest driving about that part of town in an automobile. They followed defendant's car until it stopped near the right-hand side of the street in front of Conquest's house, and drove up and stopped their car near defendant's car and on the left side of it. The sheriff got out of the car in which he was riding, stepped up to defendant, who was in his car, and told him that he wanted to search his car. Immediately Conquest got out on the right-hand side of the car in which he and defendant were riding, and defendant started to get out on the same side. The sheriff ran around from the left to the right side of defendant's car. Maiden also got out of the car in which he was riding and ran around to the right of defendant's car. As he was doing so he saw a bottle in the air as though it had been thrown from defendant's car on the right side of it to the ground. Just as the sheriff got around to the right of defendant's car he saw defendant in the act of breaking a bottle over the right front wheel of his car. A part of the broken bottle was obtained. The odor from the bottle and the wheel of the car indicated that the bottle had contained whisky. Maiden, or the sheriff, saw another bottle lying near the car, which was picked up. Two siphons, designed to be used in drawing liquids from one container to another, were found in defendant's car. One of these was under the front seat cushion, and it had been used recently; the other was in the rear of the car. Defendant and Conquest were arrested. The bottle picked up from the ground was properly labeled by Maiden for identification, and the next morning he tested its contents with a hydrometer. This test showed its contents to be 96 per cent whisky, and Maiden made a notation of that on the label which he placed on the bottle. The bottle was left with the sheriff for safe-keeping until the trial, and was offered in evidence.

Appellant first complains that the court unduly restricted his cross-examination of the witness Maiden. This was with reference to some instances in the past life of the witness which had no relation to the facts of the case then on trial. It is argued that answers

to the questions propounded would have had a bearing upon the weight to be given to the testimony of this witness by the jury. The extent to which such matters may be inquired into is largely in the discretion of the trial court, and in this instance there is no indication that the court abused its discretion.

Conquest was called as a witness for the state and a few questions were propounded to him. On cross-examination he was asked if there was any whisky in the car. An objection to this question was sustained. Complaint is made of that ruling. It was not proper cross-examination, hence the ruling was correct. More than that, Conquest was later called as a witness for defendant and testified that he did not know there was any whisky in the car.

On the trial the bottle picked up by the officers, and later labeled by them, was offered in evidence. The jurors, or some of them, read the label, or had an opportunity to do so. Appellant complains that this was improper evidence. It was clear from the evidence that the label was not on the bottle at the time it was picked up, but had been placed there by Maiden afterwards. We are unable to see how the jury could have been misled.

In one of his instructions the court told the jury that evidence had been introduced relating to the defendant's having broken a bottle on his car, and told the jury:

"You may consider such testimony as one of the circumstances in this case and taken in connection with all the other facts and circumstances in relation to this case in determining the guilt or innocence of the defendant, and if after consideration of this and all other testimony in this case you find from the evidence beyond a reasonable doubt that the said defendant did break a bottle over the front part of his automobile and that said bottle contained whisky, then you are instructed that the defendant by breaking said bottle and destroying the contents therein cannot relieve himself of the consequences of the crime charged in count one, which count pertains to the unlawful possession of intoxicating liquor, if you find that the defendant had possession of same as hereinbefore defined."

And further, that the fact that defendant broke the bottle would not of itself relieve him from liability on the other counts of the information if from the evidence the jury believed beyond a reasonable doubt that he was guilty under such counts. Appellant complains of this instruction, not so much because it does not correctly state the law, but because it singles out a portion of the evidence, thereby possibly giving it more prominence in the case than it would otherwise be entitled to receive, citing *State v. Tawney*, 81 Kan.

162, 167, 105 Pac. 318. The cases, of course, are quite dissimilar. It has been said, as in the Tawney case, that it is a dangerous practice to call attention to an isolated fact and thus, by making it prominent, lead the jury to give it greater significance than other unmentioned facts which may be of no less importance. On the other hand, instructions that are simply abstract statements of principles of law are sometimes difficult to be applied by the jury to the facts of a case. The substance of the instruction complained of is that if, from all the evidence, the jury believed the defendant to be guilty beyond a reasonable doubt, the fact that he broke this bottle would not constitute a defense or relieve him from liability. There was no controversy in the evidence about defendant having broken the bottle. Defendant testified to it, as did the witnesses for the state. The instruction was correct as a statement of the law, and if there was any likelihood that the jury might take the view that the defendant, having broken the bottle, would be relieved from the consequences of his unlawful act of possession and transportation and the like, it was not only proper, but important, that the instruction be given.

Appellant complains of an instruction in which the court told the jury that no evidence had been introduced to sustain count two of the information, and that on motion the same had been withdrawn from their consideration. It is argued that by this instruction the court intimated to the jury that there was evidence to go to them on the other counts of the information. There is no merit to this complaint. The very fact that the court was submitting the other counts of the information to the jury was itself sufficient to advise the jury that the court thought there was evidence relating to them competent for their consideration.

Appellant contends that a new trial should have been granted because of misconduct of the jury. It seems that in the preparation of the motion for a new trial the jurors had declined to talk with counsel for appellant about what transpired in the jury room during their deliberation as jurors. This they had a right to do. (State v. Rhoades, 113 Kan. 455, 458, 215 Pac. 291.) At the request of counsel for appellant the jurors called as witnesses on the hearing of the motion for a new trial were by the court told that it would not be improper for them to answer any questions asked them by counsel which they deemed fit. Several of the jurors were called as witnesses on the hearing of the motion. Without detailing this

evidence, and stating it fully as favorable to appellant as the record justifies, it is to the effect that at some time during the deliberations of the jury, and when the vote had stood seven for conviction and five for acquittal, some one of the jurors said something about a new law relating to intoxicating liquors—the Jones law—which provided a more severe penalty; but it was talked that defendant was not being tried under that law. One of the jurors testified that it might have been suggested by some one that it might be better for the jury to decide the case now than to have a mistrial, for the reason that if the defendant were tried later, possibly he would be tried under the new law. It is argued by appellant that this mention of the new law may have caused some of the jurors who first voted not guilty later to agree to the verdict of guilty. This theory is quite shadowy at the best. It is clear from the testimony of the jurors that all of them knew and understood from the instructions of the court that defendant was being tried under the state law, and that their function was to consider the evidence offered at the trial and determine whether or not, under that evidence and the court's instructions, the defendant should be found guilty. It was not error for the court to refuse to grant a new trial.

The judgment of the court below is affirmed.